Regis O’Brien, J.
Motions by defendant Howard Waters, first, for an order allowing him to serve an amended answer pursuant to section 245 of the Civil Practice Act, and, second, for an order dismissing the complaint upon the ground that plaintiff’s sole remedy is under the Workmen’s Compensation Law. The second motion will be considered first.
The action has been brought to recover for injuries arising out of an automobile accident which is alleged to have occurred through the negligence of the defendants, on June 13, 1957. Plaintiff, at that time, was a passenger in an automobile owned and operated by defendant, Howard Waters. It came into collision with an automobile owned and operated by defendant, Dorothy Wilson.
Plaintiff alleges that his damage was caused by the negligence of either, or both, of the defendants.
*821 Defendant Waters served an answer, usual to the ordinary negligence action, and later proceeded to prepare the case for trial, during the course of which the plaintiff and others were examined under court order.
The plaintiff’s examination revealed that he was a member of a band consisting of five members, one of whom was defendant Waters. They averaged “three days a week at the Gayety ”, plus dances. They played “ Friday, Saturday and Sunday ” at the Gayety. Plaintiff “ was paid $25.00 per night.” “ That was the only work ” he did.
The defendant Waters also explained his activities. He worked as a bricklayer’s helper and also ran a dance band. There were four other members in the band. He explained ‘11 would get engagements in different taverns and night clubs. Some of the engagements were written contracts and some were by oral agreements. I was always paid by the proprietor and I in turn paid the band members. I paid them for each appearance or night that we played. They were paid at the standard rate for musicians and singers, which is $12.00 and $15.00.”
The affidavit, after naming the members of the band, recites ‘ ‘ we played usually 3 or 4 nights a week. I was paid every week end and when I was paid I then paid the band.”
In referring to the night of the accident, Mr. Waters states: “We were going to rehearse down at the Gayety on the night of June 13, 1957. I picked Joyce Bland up at her house and then stopped for Chester MacDougle and picked him up at his house. I tried to pick up a drummer on Woodlawn Avenue but he wasn’t home. After waiting for a while I started for the Gayety Tavern. We were to meet the rest of the band there. It was when we were on the way to the Gayety that we were in an accident at the corner of Woodlawn and Hasten. ”
Under those facts, the defendant, Waters, claims that the plaintiff was injured in the “ course of his employment ” as a member of Waters’ band and is therefore restricted to a claim under the Workmen’s Compensation Law. The defendant’s attorney contends that the defendant, being a band leader, is engaged in a business covered by the Workmen’s Compensation Law. Therefore, the plaintiff being a member of the band, is limited to the protection of the Workmen’s Compensation Law.
The defendant claims that his contention is supported by cited decisions, the two main ones being Matter of Europe v. Addison Amusements (231 N. Y. 105) and Matter of Gilmore v. Preferred Acc. Ins. Co. (283 N. Y. 92). These decisions, however, do not sustain the defendant’s position. The facts in *822 our case are not similar, except that Mr. Waters and Mr. Europe were band leaders.
Thus, in the Europe case (pp. 108-109), where the court granted an award under the Workmen’s Compensation Law to the plaintiff’s widow, it was pointed out that the Addison Amusements, Inc. employed a band of 65 pieces for the purpose of giving concerts for hire; also that “ The evidence permitted the finding that it employed with the hand four or more workmen or operatives regularly who accompanied the hand and, therefore, were engaged in the same business.” These workmen were “ a stage manager, who arranged the platforms, chairs and scenery, a man * * * who handled the baggage * * * another man * * * who assisted * * # in * * * handling the baggage, and a fourth man * * # who took care of the uniforms of the men, pressing, cleaning and repairing them.” Then, continues the court, “Although these four men took some part at times in entertaining, their principal work was the manual labor connected with maintaining such a hand ” (emphasis supplied).
The court concludes that while the conductor was not himself engaged in hazardous work, he was an employee of Addison Amusements, Inc., and hence engaged in a business, classified by the Workmen’s Compensation Law as a “hazardous employment.”
In effect, the Europe case holds that a musician is neither a “ workman nor an operative” as defined in the Workmen’s Compensation Law.
The Gilmore case construed the provisions of group 18 of subdivision 1 of section 3 of the law pertaining to coverage. The claimant was a lawyer employed as an investigator and claims adjuster. He made a claim against his employer for compensation payments. The employer had a total of 16 employees engaged in the same kind of work. The court, in reversing the judgment upholding the award of compensation to the claimant, held that the phrase “ workmen or operatives ” has a more restricted meaning than that of “ employee ” and that the claimant was not a workman or operative within the purview of the statute.
In view of those decisions plaintiff here was neither engaged in a hazardous employment nor in a business in which four or more employees were engaged in a hazardous employment. The motions of the defendant Waters are denied.
Submit order.